Bryon J. Benevento (5254)
Kimberly Neville (9067)
Dorsey & Whitney LLP
Kearns Building
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| CSA BIOTECHNOLOGIES, LLC, and N8 PHARMACEUTICALS, INC.<br><br>      Plaintiffs,<br><br>vs.<br><br>KINNEAR PHARMACEUTICALS, LLC and N8 MEDICAL, INC.<br><br>      Defendants. | **MOTION TO STAY LITIGATION AND COMPEL ARBITRATION; SUPPORTING MEMORANDUM**<br><br>Case No.:  2:15-CV-00717<br><br>Magistrate Judge Dustin Pead |

Pursuant to Rule 7 of the Federal Rules of Civil Procedure, Defendants Kinnear Pharmaceuticals, LLC ("Kinnear") and N8 Medical, Inc. ("N8 Medical") move this Court for an order staying this action and compelling arbitration before the American Arbitration Association ("AAA").  The basis for this motion is that the claims at issue in this action are subject to binding arbitration.

I.      **INTRODUCTION.**

This case is part of a larger dispute pertaining to the parties' competing rights to commercialize, sell, and distribute various products that have been developed from cationic

selective antimicrobials (otherwise known as "CSAs" or "ceragenins"). As discussed below, Plaintiff N8 Pharmaceuticals, Inc. ("N8 Pharma") and Defendant N8 Medical have each obtained a license from Brigham Young University to develop the ceragenins in specified "fields of use." A dispute has arisen between the parties as to which side has the right to commercially exploit ceragenins for purposes of developing mouth wash and mouth rinse products used in the treatment of oral mucositis. N8 Medical has filed an arbitration action against N8 Pharma and its parent, CSA Biotechnologies, LLC ("CSA Biotech"), in order to resolve this issue and other claims.

The license agreements and other agreements that govern this dispute contain clear arbitration provisions, which mandate that any dispute concerning the parties' fields of use be decided by binding arbitration before the AAA. The license agreements also specifically bind any affiliates of the entities that exploit the ceragenin technology. Thus, all claims at issue in this action are subject to arbitration, since each of the Plaintiffs' claims hinges upon their perceived right to develop ceragenins in the disputed fields of application – an issue that is expressly reserved for arbitration under the parties' contracts. Accordingly, Defendants request that the Court enter an order staying these proceedings and compelling arbitration.

## II.   STATEMENT OF FACTS

### A.   History of the Parties' Dispute.

This case is effectively a corollary of previous disputes concerning the parties' competing rights to develop ceragenin products and technologies. In early 2012, a dispute arose between N8 Medical, N8 Pharma (which, at that time, was owned by the same shareholders as N8 Medical), CSA Biotech, and a third party. Although the details of that dispute are not

particularly relevant to this motion, in general terms, the dispute centered upon which party had the right to commercialize ceragenins in various products and applications.

In order to resolve that dispute, the parties entered into a comprehensive Settlement and Release Agreement dated April 20, 2012, which defined and divided their respective fields of application for the technology.  See Settlement and Release Agreement, attached hereto as Exhibit 1 (under seal).  The agreement was subsequently amended on or about May 12, 2012.  See First Amendment to Settlement and Release Agreement, attached as Exhibit 2.

As part of the settlement, CSA Biotech, N8 Medical and N8 Pharma were each required to work with BYU to amend and/or obtain new licensing agreements to clarify their rights to commercialize ceragenin technologies and applications.  Thus, the settlement resulted in the execution of two new and amended license agreements between: (i) N8 Medical and BYU; and (ii) N8 Pharma and BYU.  See Richards Decl. at Ex. 3-A and 3-B.  In addition, the settlement also involved CSA Biotech's purchase all of N8 Pharma's shares from N8 Medical under a separate Stock Purchase Agreement.  Id. at ¶ 11.

### B. The Arbitration Provisions.

The settlement documentation and licensing agreements anticipated that there could be potential future disputes between the parties regarding their respective fields of use or rights to use the ceragenin technology for certain applications.  Consequently, the parties' agreements expressly provided for a mechanism to resolve these disputes through binding arbitration.  Specifically, the First Amendment to the Settlement and Release Agreement provides that:

> Any and all disputes pursuant to or in connection with this Agreement or any of the matters set forth herein shall be settled by final and binding arbitration between the Parties in St. Louis, Missouri in accordance with the Rules of the American Arbitration

Association and a panel of three (3) arbitrators, one selected by each of the Parties in dispute and the third selected by the two (2) arbitrators selected by such Parties.

See First Amendment to Settlement and Release Agreement (Ex. 2) at § 7.

Likewise, the parties' respective license agreements with BYU each state:

LICENSEE represents and warrants to BYU that (a) to the best of its knowledge there is no conflict or overlap between the products, processes, or applications that are included within the FIELD OF APPLICATION and the Other Parties' respective fields of application … provided, however, that **any disputes or issues between LICENSEE and the Other Parties regarding the FIELD OF APPLICATION and Other Party Fields (1) shall be settled by final and binding arbitration between LICENSEE and Other Parties as provided in the SETTLEMENT AGREEMENT….**

See N8 Medical / BYU License Agreement (Ex. 3-A) at §XVII.F (emphasis added); N8 Pharma / BYU License Agreement (Ex. 3-B) at § XVII.F (emphasis added).

Importantly, the parties' license agreements define the term "Licensee" broadly to include not only N8 Medical and N8 Pharma, but also their respective "Affiliates," successors, and assignees. Id. at § I.O. The license agreements further define the term "Affiliates" broadly to include "any person or entity owned or controlled directly or indirectly by LICENSEE…." Id. at § I.B.

Defendant Kinnear is an affiliate of N8 Medical, as it is 100% owned by N8 Medical. See Richards Decl. (Ex. 3) at ¶¶ 17-19, Ex. 3-C, and Ex. 3-D. Kinnear has agreed to be bound by the terms of the relevant arbitration provisions discussed herein. Id. at ¶ 20. Likewise, Plaintiffs concede that CSA Biotech is the parent of N8 Pharma, and thus, an "affiliate" of N8 Pharma under the entity's license agreement. See Complaint (Docket No. 2) at ¶ 6

C.   **N8 Medical's Arbitration Action and Plaintiffs' Competing Lawsuit.**

As discussed above, the parties each contend that they have the right to commercially develop ceragenins in the form of mouthwash and mouth rinse oral mucositis treatments under

4

their respective license agreement with BYU.  Accordingly, N8 Medical has filed an arbitration demand with the AAA to construe the parties' fields of application and to determine which party has the right to develop the technology in this area.  See First Amended Arbitration Demand, attached as Exhibit 4.  In particular, the Arbitration Demand requests a declaration confirming that N8 Medical possesses the right to "commercializ[e] ceragenins for the treatment of oral mucositis and other inflammation, mouth sores, or ulceration of or in the mouth through mouthwash and mouth rinse applications, whether prescription or non-prescription." Id. at ¶ 75. N8 Medical also seeks damages and equitable relief to address CSA Biotech and N8 Pharma's unauthorized development of treatments and technologies within these fields of application.  Id. at ¶¶ 69-76.

On October 5, 2015, CSA Biotech and N8 Pharma filed the present lawsuit in this Court, alleging that N8 Pharma "has the exclusive right from BYU to develop, manufacture, sell, license, transform and practice licensed processes regarding CSA productions in the field of application of oral mucositis."  See Complaint (Docket No. 2) at ¶¶ 34.  Plaintiffs further contend that N8 Medical and Kinnear have "usurped" N8 Pharma's right to develop the "oral mucositis field of application."[1]  Id. at 32.  Plaintiffs seek injunctive relief and damages for alleged violations of the Lanham Act, interference with contract, and common law unfair competition.

Notably, each of the Plaintiffs' claims turns upon their assumption that they have the right to develop ceragenin products in the field of application for oral mucositis.  Id. at ¶¶ 32-36. 42, 50, 66, 71, 81.  Thus, if the arbitration panel determines that N8 Medical possesses these rights, the Plaintiffs' claims would be moot and / or fail as a matter of law.

---

[1] Neither the N8 Medical / BYU License Agreement nor the N8 Pharma / BYU License Agreement identify "oral mucositis" as a "field of application."

5

**III.    ARGUMENT**

    **A.    Plaintiffs' Claims are Subject to Arbitration.**

This Court should stay this action since the Plaintiffs' claims are subject to binding arbitration.  The Federal Arbitration Act and the federal courts have repeatedly recognized that there is a "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581 (2008) (FAA embodies "national policy favoring arbitration"); P&P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999).  Thus, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).  A court must compel arbitration unless "it may be said with positive assurance that the Arbitration Agreement is not susceptible of an interpretation that covers the asserted dispute." Id.

Importantly, the FAA "leaves no place for the exercise of discretion by a court" when an issue falls under an arbitration agreement. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985).  Rather, the FAA "mandates that courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id.  The trial court's role under the FAA is therefore "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic, Sys. Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  Here, both of these criteria are met.

First, there is no dispute that the parties have agreed to arbitrate through not just one, but three, separate written agreements. As discussed above, the First Amendment to the Settlement and Release Agreement expressly provides that the parties will submit "[a]ny and all disputes pursuant to or in connection with this Agreement or any of the matters set forth herein" to binding arbitration before the AAA. See Ex. 2 at § 7. The parties' license agreements reiterate this same concept by providing that "any disputes or issues … regarding the FIELD OF APPLICATION … be settled by final and binding arbitration." See Ex. 3-A at §XVII.F; Ex. 3-B at § XVII.F. Thus, there is clearly a written agreement that expresses an intent to arbitrate.

Second, there should be no dispute that the agreements encompass the dispute at issue in this lawsuit. The parties have entered into a comprehensive arbitration provision that requires the parties to arbitrate "any and all disputes." See Ex. 2 at § 7. The parties' license agreements are also broadly drafted, and specifically reference the parties' licenses, their fields of application, and rights to develop the related intellectual property. See Ex. 3-A at §XVII.F; Ex. 3-B at § XVII.F. Significantly, the license agreements do not exempt any field of use disputes from the arbitration requirement, but instead, obligate the parties to resolve these disputes through the arbitration procedures outlined in the Settlement Agreement. Id.

The enforcement of the agreements' arbitration provisions is consistent with the parties' course of conduct and expressed intent in entering into their contracts. Indeed, the entire reason the parties entered into the Settlement and Release Agreement in the first instance was to resolve their ongoing dispute regarding the scope of their respective licenses and fields of application. See Ex. 1 at Recitals F and G. The Settlement Agreement set forth a clear and unambiguous process for resolving the parties' differences through arbitration by providing for the

appointment and selection of a three-person panel, administration by the AAA, and payment of the arbitrators' fees. Accordingly, the parties' agreement expresses a clear intent to arbitrate issues pertaining to a field of use dispute.

The federal courts have previously enforced arbitration provisions in circumstances similar to those found in this dispute. For example, in MedCam, Inc. v. MCNC, 414 F.3d 972 (8th Cir. 2005), the parties were engaged in a technology dispute concerning which entity had the right to develop technology in certain "fields" during a specific time period. Id. at 975. The Court noted that the parties had previously entered into a broadly-worded arbitration provision, which "specified that 'all disputes, controversies or differences arising out of or in connection with the Agreement' would be finally settled by binding arbitration." Id. at 973. Accordingly, the Court concluded that all claims between the parties must be arbitrated, since any interpretation of the claims would necessarily require a technical interpretation of the fields and the parties' respective rights under their agreement. Id. at 975. Moreover, because the clause had been broadly drafted to include "all disputes", the presumption of arbitrability applied. Id.

Similarly, the judges in this district have also enforced arbitration provisions against parents and subsidiaries who claim standing to sue upon a license agreement. In I-Link Inc. v. Red Cube International AG, a plaintiff technology company sued a telecommunications service and its wholly-owned subsidiary for tortious interference and misappropriation of trade secrets. See 2001 U.S. Dist. Lexis 1609, *2 (D. Utah 2001, Judge Kimball). The defendant sought to compel arbitration of all claims, including those that did not arise from the arbitration agreement. The Court determined that all claims were subject to arbitration, because they were "sufficiently related" to the parties' primary agreement. Id. at *9. Notably, the Court also concluded that the

claims against the defendant's subsidiary (who had not signed the arbitration agreement) were also subject to arbitration, finding that the claims against the subsidiary were "sufficiently intertwined" with those against the parent.  As such, the plaintiff was equitably estopped from avoiding arbitration by naming a non-signatory.  Id. at *13-14.

The same principles apply to the case at hand.  Here, the parties have entered into a broad arbitration provision that governs "any disputes" regarding the fields of application, with no identified exceptions.  The license agreements extends to the parties' affiliates, who are attempting to invoke the benefits of those licenses.  Accordingly, federal law presumes that these claims will be arbitrated, and the dispute should be referred to arbitration.

### B. The Court Should Stay This Action Pending the Outcome of the Arbitration.

"Under the Federal Arbitration Act, if a federal district court determines that a suit is subject to an arbitration agreement, it shall, on application of a party, stay the litigation pending arbitration, and 'make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement…'"  Walker v. BuildDirect.com Techs., Inc., 733 F.3d 1001, 1004 (10th Cir. 2013) (citing 9 U.S.C. §§ 3-4).  Similarly, 9 U.S.C. § 3 mandates that courts shall stay all proceedings where an arbitration agreement covers the parties' disputes.  The operative language of the statute states:

> § 3.  Stay of proceedings where issue therein referable to arbitration
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9. U.S.C. § 3; see also Pearce v. E.F. Hutton Group, 828 F.2d 826, 830 (D.C. Cir. 1987) (stating that court must, on application, stay the proceeding pending arbitration); Morales v. Continental Finance Co., LLC, 2009 WL 2579093, *3 (D. Utah 2009) (same).

Here, a stay is not only mandated by the FAA, but also makes practical sense. Each of the Plaintiffs' claims in this lawsuit depend upon the Plaintiffs proving that their license includes oral mucositis treatment applications. In other words, in order to prevail on any claim in this lawsuit, the Plaintiffs must first demonstrate that their license includes the disputed fields of application. This issue is expressly for reserved for arbitration, and the arbitration panel's decision on this issue could be potentially dispositive of all of the Plaintiffs' claims.

The Utah federal courts that have considered this issue have concluded that a stay is appropriate when arbitrable claims "predominate" the litigation. For example, in Neuterra Healthcare Mgmt., LLC v. Parry, 2012 U.S. Dist. Lexis 47840 (D. Utah 2012, Judge Stewart), a plaintiff sued multiple parties for breach of a management agreement, breach of an employment contract, and various torts. Id. at *3-4. The lead defendants sought to compel arbitration, invoking an arbitration provision found within the management agreement. The plaintiff opposed the motion, arguing that the remaining claims and those against the minor defendants were not subject to arbitration.

The district court rejected this argument, finding that the "arbitrable claims predominate over the nonarbitrable claims." Id. at *13. Thus, the Court concluded that it was appropriate to exercise its discretion to stay the entire action until the arbitratable claims were decided. Id. Numerous other courts have reached a similar conclusion. See e.g., Moses H. Cone Mem'l. Hosp., 460 U.S. at 21 n. 23, ("It may be advisable to stay litigation among the non-arbitrating

parties pending the outcome of the arbitration. That decision is one left to the court . . . as a matter of its discretion to control its docket."); Gooding v. Shearson Lehman Bros., Inc., 878 F.2d 281, 284-85 (9th Cir. 1989) (dismissing appeal of trial court's order granting motion to compel arbitration of state law claims and stay of litigation of federal securities claims pending arbitration of state law claims); Quick & Reilly, Inc. & Davidson, 103 A.D.2d 958, 959 (N.Y. 1984) (affirming stay of federal securities claims pending arbitration of common law claims); Harsco Corp. v. Crane Carrier Co., 701 N.E.2d 1040, 1047 (Ohio Ct. App. 1997) (reversing denial of motion to compel arbitration and ordering stay of nonarbitrable claims pending conclusion of the arbitration).

Under these circumstances, the Court should order a stay as a matter of judicial economy until the AAA panel has an opportunity to rule on the pending field of use of dispute. The key issue in this dispute will be which party possesses the right to exploit the ceragenin technology in the contested field of application. This issue is expressly reserved for arbitration and predominates over all other claims.

### IV.    CONCLUSION

For the reasons set forth above, Defendants request that the Court enter an order staying this litigation and compelling arbitration before the AAA.

DATED this 30th day of October, 2015.

**DORSEY & WHITNEY LLP**

*/s/  Kimberly Neville*
Bryon J. Benevento
Kimberly Neville
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2015, a true and correct copy of the **MOTION TO STAY LITIGATION AND COMPEL ARBITRATION; SUPPORTING MEMORANDUM** was served upon the person(s) named below, at the address set out below either by mailing, postage prepaid, hand-delivery, Federal Express, telecopy, e-mail, or ECF as indicated below:

| | |
|---|---|
| Richard R. Thomas<br>Stephen C. Biggs<br>SMITH LC<br>4505 E. Chandler Blvd., Ste. 290<br>Phoenix, AZ 85048 | ☐ U.S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Telecopy<br>☐ E-mail<br>☒ ECF |
| Steven C. Smith<br>John S. Clifford<br>SMITH LC<br>3161 Michelson Dr., Ste. 925<br>Irvine, CA 92612 | ☐ U.S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Telecopy<br>☐ E-mail<br>☒ ECF |

/s/   *Vanessa Thompson*