Bryon J. Benevento (5254)
Kimberly Neville (9067)
Dorsey & Whitney LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| CSA BIOTECHNOLOGIES, LLC, and N8 PHARMACEUTICALS, INC.<br><br>　　Plaintiffs,<br><br>vs.<br><br>KINNEAR PHARMACEUTICALS, LLC and N8 MEDICAL, INC.<br><br>　　Defendants. | **SUPPLEMENTAL DECLARATION OF DAVID J. RICHARDS IN SUPPORT OF DEFENDANTS' MOTION TO STAY LITIGATION AND COMPEL ARBITRATION**<br><br>Case No.:  2:15-CV-00717 JNP-PMW<br><br>Judge Jill Parrish<br>Magistrate Judge Paul M. Warner |

　　I, David J. Richards, declare under penalty of perjury as follows:

　　1.　　This supplemental declaration is being submitted to respond to certain allegations that were made in the Plaintiff's Memorandum in Response to Defendants' Motion to Stay Litigation and Compel Arbitration.  The information contained herein is based on my own personal knowledge of the matters set forth herein.

　　2.　　This matter originates from the dispute resulting in the Settlement and Release Agreement (the "Settlement Agreement"), a copy of which was attached as Exhibit 1 to Defendant's Motion to Stay and Compel Arbitration.  The current dispute involves the same

license agreements (albeit amended versions) negotiated as a result of the settlement reached pursuant to the Settlement Agreement (as amended).

3. The factual background leading up to the Settlement Agreement is briefly outlined in the recitals of the Settlement Agreement. To the extent the Court is interested in a fuller account of the factual history, I could competently testify as follows:

4. Prior to 2010, the Plaintiff, N8 Pharmaceuticals, Inc. ("N8 Pharma"), was owned and controlled by Defendant, N8 Medical, Inc. ("N8 Medical").

5. In 2010, a dispute arose between, among others, N8 Medical, N8 Pharma, and RiverRock Bioscience, LLC ("RiverRock,") which is a company Defendant believes is currently owned by Plaintiff, CSA Biotechnologies, LLC. In 2010, N8 Medical contacted RiverRock after learning that RiverRock was developing products N8 Medical believed to be within N8 Medical's exclusive fields of use.

6. In order to resolve the dispute, N8 Medical and N8 Pharma agreed to give up their claims to certain field of use rights and to sell certain rights to RiverRock pursuant to a Securities Purchase Agreement dated as of August 2, 2011 ("First SPA"). Under the First SPA, RiverRock also agreed to purchase an interest in N8 Medical, thus acquiring the right to develop products in the disputed fields of use. RiverRock did not pay the funds that were necessary to close the transaction, and shortly thereafter, litigation ensued.

7. On December 8, 2011, N8 Medical filed an arbitration demand with the American Arbitration Association to declare the appropriate fields of use. RiverRock filed a competing complaint in the United States District Court for the District of Utah on December 14, 2011, which effectively sought the same relief. N8 Medical then initiated an action in the United

States District Court for the Eastern District of Missouri in order to compel the parties to arbitrate. The Missouri Federal Court granted this relief.

8.  On April 20, 2012, the parties entered into the Settlement Agreement, in attempt to resolve their longstanding dispute. The signatories to the Settlement Agreement included CSA Biotechnologies, LLC, N8 Medical, N8 Pharma, and RiverRock.

9.  The Settlement Agreement contemplated the division, procurement, and ceding of rights between CSA Biotechnologies, LLC, N8 Medical, N8 Pharma, and RiverRock. The Settlement Agreement also attached a form of new and amended licensing agreements that would divide these rights between CSA Biotechnologies, LLC, N8 Medical, N8 Pharma, and RiverRock.

10. The Settlement Agreement also anticipated that there may be future transactions between N8 Medical, N8 Pharma, and / or CSA Biotechnologies, LLC regarding the parties respective licensing rights. Section 4 of the agreements states that:

> In the case that the foregoing applies with respect to FIELD OF APPLICATION rights among N8INC and N8Pharma, the foregoing obligations shall not become effective unless and until required pursuant to any subsequent transactions between N8 and BioTech.

11. The Settlement Agreement was amended on May 12, 2012. Under the amendment, the parties agreed "to continue work in good faith and cooperate to achieve fully executed, final license agreements between themselves and BYU for the CSA Technology consistent with the [Settlement Agreement]…." The amendment also included a mandatory arbitration provision, which required binding arbitration before a three-person panel in St. Louis, Missouri.

12. As expected by the Settlement Agreement, subsequent transactions between N8 Medical and N8 Pharma and CSA Biotechnologies occurred. Less than three months after the

Settlement Agreement was finalized, on June 4, 2012, N8 Medical, N8 Pharma, and CSA Biotechnologies entered into a Stock Purchase Agreement ("Second SPA"), which similar to the same as the First SPA that RiverRock failed to finalize. Likewise, as contemplated by the Settlement Agreement, the parties also negotiated and obtained new and amended licensing agreements between (i) N8 Medical and BYU and (ii) N8 Pharma (now owned by CSA Biotechnologies, LLC).

13. The present dispute specifically involves the license agreements that I negotiated between (i) N8 Medical and BYU and (ii) N8 Pharms and BYU. Section XVII.F. of those license agreements requires mandatory arbitration for the exact scenario present in this case: a dispute between N8 Pharma (and its affiliates) and N8 Medical (and its affiliates) regarding field of use rights. This was a specific provision that I negotiated with BYU, with the consent, knowledge and approval of Plaintiffs.

14. Contrary to Plaintiffs arguments, Section XVII.C. of the license agreements is a general provision that is only meant to apply to disputes with "other licensees," not those between N8 Pharma (and its affiliates) and N8 Medical (and its affiliates).

15. Section XVII.F was not included in the parties' original license agreements prior to the closing of the Second SPA, and the reason Section XVII.F was included in later versions was to carry the intention of the parties from the Field Settlement Agreement and Second SPA to arbitrate all disputes in St. Louis. The rational for arbitration was to provide a neutral form in order to better promote a quick resolution with respect to any field of use disputes between the parties.

16. Throughout negotiations pertaining to the relevant licensee agreements, I made it very clear that N8 Medical (and its affiliates) was not going to be subject to the jurisdiction of

CSA Biotechnologies, LLC home forum in Utah for any disputes related to the parties' license agreements negotiated under the Field Settlement Agreement and Second SPA.  Similarly, I did not expect them to accept or be subject to Ohio's jurisdiction for field of use disputes filed by N8 Medical.  This is why St. Louis, Missouri was chosen as a neutral location to litigate all disputes in arbitration.

17.   Defendant has filed an arbitration related to the division on the party's field of use rights at issue in this litigation. The same arbitration also involves Plaintiffs' violation of the provisions of the SPA.

18.   On a similar note, attached to Plaintiff's Memorandum in Response to Defendants' Motion to Stay Litigation and Compel Arbitration is a Second Amendment to the license agreement between N8 Pharma and BYU (the "Second Amendment").  N8 Medical was not aware of this Second Amendment, and contends that the Plaintiffs' procurement of this Second Amendment violates Section 9.10 of the Second SPA, which states:

> 9.10 Amendments to New License Agreements. **In the event that the Corporation, N8Pharma and/or Buyer [**CSA Biotechnologies, LLC**], are able to obtain any amendment, modification, improvement or enhancement to such Party's respective New License Agreement that increases, improves or enhances such Party's rights thereunder, then such Party must also negotiate that such amendment, modification, improvement or enhancement also applies to the other Party's respective New License Agreement. Such Parties may not execute or accept any such amendment, modification, improvement or enhancement, unless and until a corresponding amendment is negotiated and executed to apply to such other Parties' respective New License Agreement, or the other Parties' waiver of this provision is obtained.** *The Parties shall not make any attempt to circumvent the protections set forth in this Section by transfer of the New License Agreement to a third party or otherwise.* The foregoing provision shall not apply to acquisitions of additional Field of Application rights by one Party, or additions to the Parties' respective Fields of Application (in each case consistent with the Division of Rights), or amendments, modifications, improvements or enhancements specific to one party's Field of Application that have no potential application or use pursuant to, or potential to benefit, the other party's Field of Application or New License Agreement.

- 6 -

19. The Second SPA also includes a mandatory arbitration clause, which states:

> **11.7 Arbitration**. All disputes arising under or related to this Agreement *shall be* subject *to final and binding arbitration in accordance with the provisions of this Section* . […] In the event that the dispute cannot be settled amicably, then either party may submit such dispute to final and binding arbitration before a panel of three (3) arbitrators selected one (1) each by (1) Buyer, (2) the Founders, and (3) jointly by the first two (2) arbitrators from a recognized panel of distinguished neutrals. *The arbitration hearing shall be held in St. Louis, Missouri unless otherwise agreed, shall be subject to the jurisdiction and the then-current rules of the American Arbitration Association.*

20. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 3rd day of December, 2015 in Columbus, Ohio.

_____
David J. Richards